# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLENE HEACOCK, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 10-01625-JEM <br><br> MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On November 1, 2010, Jolene Heacock ("Plaintiff" or "Claimant") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security disability insurance benefits and supplemental income benefits. On April 29, 2011, the Commissioner filed an Answer to the Complaint. On June 29, 2011, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and

the case remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 54 year old female alleging disability beginning August 13, 2005, due to stroke, carotid artery blockage, a blood clot behind the right eye, poor memory, and depression. (AR 8, JS 2.) Plaintiff has not engaged in substantial gainful activity since that date. (AR 327.)

Plaintiff's claims were denied initially and on reconsideration. (AR 8.) Plaintiff filed a timely request for hearing, which was held on March 26, 2008, in San Bernardino, California before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr. (AR 8-19.) Medical expert Samuel Landau, M.D., and vocational expert ("VE") Sandra M. Fioretti also testified. (AR 8.) Plaintiff was represented by counsel. (AR 8.)

The ALJ issued an unfavorable decision on April 22, 2008 (the "Prior Decision"). (AR 8-19.) The Appeals Council denied review on June 21, 2008. (AR 1-3), Plaintiff appealed to this Court. On December 12, 2008, United States Magistrate Judge Carolyn Turchin issued an order vacating the Prior Decision and remanding for further proceedings (the "Remand Order"), directing the ALJ to give further consideration to whether Plaintiff's inability to drive would preclude the jobs cited by the VE and to address the inconsistency between the VE testimony and the Dictionary of Occupational Titles ("DICOT") regarding the bench assembler position. (AR 364-77.)

Following remand, the ALJ held a hearing on June 29, 2010 (AR 325), and issued an unfavorable decision on August 12, 2010 (the "Post-Remand Decision"). (AR 325-32.) The Prior Decision of April 22, 2008, was incorporated by reference in the Post-Remand Decision (AR 325) and updated with new medical records. (AR 330.) The Appeals Council did not review the ALJ's decision, which became the final decision of the Commissioner. See 20 C.F.R. § 404.984.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the only issue Plaintiff raises as a ground for reversal and remand is as follows: Whether the ALJ's determination that Plaintiff is capable of performing the jobs of bench assembler and office helper is consistent with the ALJ's residual functional capacity findings.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## THE ALJ'S DECISION

In the Post-Remand Decision, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since August 13, 2005, the alleged onset date.  (AR 327.)

At step two, the ALJ found that Plaintiff has the following medically determinable severe impairments:

> . . . history of transient ischemic attacks (TIA) and stroke in August 2005; obesity; a possible seizure disorder; an organic mental disorder; a depressive disorder; and premigraine visual disturbance.

(AR 327.)

At step three, the ALJ determined that Claimant does not have an impairment that meets or medically equals any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.  (AR 328.)

The ALJ then found that Plaintiff has the RFC to perform light work with the following exceptions:

> . . . out of an 8-hour period, she can stand and/or walk for 2 hours and sit for 6 hours with normal breaks every 2 hours.  The claimant has to get up slowly from a seated position.  She would miss work once, sometimes twice a month- The usual seizure precautions apply.  The claimant can

|   | climb stairs but cannot climb ladders, ropes, or scaffolds. She cannot |
|---|---|

climb stairs but cannot climb ladders, ropes, or scaffolds. She cannot
work at heights, balance, operate motorized equipment or work around
dangerous, moving machinery. Mentally, due to alleged confusion and
memory problems, the claimant can perform simple, repetitive low stress
jobs requiring less than occasional contact with the public as well as
interpersonal contact with co-workers and supervisors. The claimant
cannot drive a motor vehicle and needs an extra 20 minute break once a
month.

(AR 328-29.) In determining Plaintiff's RFC, the ALJ made an adverse credibility finding (AR 329) that is not challenged here.

At step four, the ALJ found that Claimant is unable to perform her past relevant work as a grocery clerk and waitress. (AR 331.) The ALJ, however, determined at step five that there were other jobs in the national economy that Plaintiff could perform. (AR 331-32.) These include office helper and bench assembler. (AR 332.)

Hence, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 332.)

**DISCUSSION**

Plaintiff does not dispute the ALJ's determination of her impairments, RFC or credibility. Plaintiff contends that the ALJ's step five determination that she can perform the jobs of bench assembler and office helper is not supported by substantial evidence. Specifically, she contends that the ALJ's RFC precluding jobs that require driving conflicts with the job requirements for the office helper job set forth in DICOT. She also contends that the VE's testimony conflicts with DICOT in regard to the bench assembler position because it requires use of power tools precluded by the ALJ's RFC.

Plaintiff's first contention regarding the office helper job is meritless, but Plaintiff is correct that the VE testimony conflicts with DICOT on the bench assembler job and fails to provide a reasonable explanation for the conflict. Remand is required.

**A. Relevant Law**

The Commissioner bears the burden at step five of the sequential process to prove that Plaintiff can perform other work in the national economy, given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000); 20 C.F.R. § 416.912(g). There are two ways to meet this burden: (1) the testimony of a VE, or (2) reference to the Grids. Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant suffers only exertional limitations, the ALJ must consult the Grids. Lounsburry, 468 F.3d at 1115. A nonexertional impairment, however, may limit the claimant's functional capacity in ways not contemplated by the Grids. Tackett v. Apfel, 180 F.3d 1094, 1002 (9th Cir. 1999). Thus, when a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of "disabled." Id. at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If so, the claimant will be awarded benefits. Cooper, 880 F.2d at 1155. If not, the ALJ must use the Grids as a framework for decision-making in determining how much the nonexertional limitations limit the range of work permitted by the exertional limitations. Tackett, 180 F.3d at 1102. In such instances, the ALJ must obtain the testimony of a vocational expert to determine if there are jobs in the national economy that the claimant can perform. Tackett, 180 F.3d at 1102; Osenbrock, 240 F.3d at 1162.

Typically, the best source of how a job is generally performed in the national economy is DICOT. Pinto, 249 F.3d at 845. DICOT raises a presumption as to job classification requirements. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may accept vocational expert testimony that varies from DICOT, but the record must contain "persuasive evidence to support the deviation." Id. The ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's testimony and DICOT. SSR 00-4p, 2000 WL 1898704, *4 (S.S.A.); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). If there is a conflict, the ALJ must obtain a reasonable explanation for the conflict and then must decide whether to rely on the VE or DICOT. Id. Failure to do so, however, can be harmless error

where there is no actual conflict or the VE provides sufficient support to justify a variation from DICOT. Id. at 1154 n.19.

### B. The ALJ's Step Five Determination That Plaintiff Can Perform The Job Of Office Helper Is Supported By Substantial Evidence

In this case, the ALJ could not rely on the Grids in making his step five determination because Claimant's nonexertional limitations eroded the light occupational base. (AR 332.) See Moore, 216 F.3d at 869. The ALJ correctly observed that when the claimant has nonexertional limitations, the Grids are used as a framework for decision-making and a VE must be consulted to determine the extent these limitations erode the unskilled light occupational base, citing SSR 83-12 and 83-14. (AR 331-332.) SSR 83-12 provides that "where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource." SSR 83-14 provides that where the nonexertional impairment significantly erodes the occupational base, "the remaining portion will guide the decision."

Thus, the ALJ was required to take the testimony of a VE and did. Id. An ALJ may rely on a VE's response to a hypothetical question containing all of a claimant's limitations found credible by the ALJ and supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005.) Here, the ALJ presented the VE with all of Plaintiff's limitations. The VE found that Plaintiff could perform the job of office worker eroded by 60% and bench assembler eroded by 85%.

In the Prior Decision, the ALJ's RFC contained a limitation precluding operation of motorized equipment. (AR 12.) The ALJ did not include Dr. Moore's specific limitation on operating a motor vehicle which the Prior Decision regarded as not necessarily the same as the restriction on operating motorized equipment. (AR 368-69.) There was no explanation for why Dr. Moore's limitation was omitted from the RFC. (AR 369.) Thus, the Prior Decision held that "because the hypothetical posed by the ALJ to the VE did not include a driving restriction, it is impossible to tell whether the office helper jobs that the VE found Plaintiff

could perform include jobs that require driving." (AR 370.) Accordingly, remand was ordered.

In the Post-Remand Decision, the ALJ made the "no driving" restriction specific in the RFC. (AR 329, 330-31.) At the Post-Remand hearing, the VE clarified that, when she eroded the office helper job by 50% at the prior hearing, she regarded the restriction against operating motorized equipment to include no driving. (AR 352.) She then increased the erosion to 60% to account for the low stress requirement. (AR 354.) She also indicated that neither the officer worker or the bench assembler jobs require driving. (AR 355.) The erosion to 60% for the office worker job with all restrictions would leave 600 jobs regionally. (AR 332, 353.)

The VE's opinion was reasonable. The DICOT job description for the office worker position provides as follows:

> Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

DICOT 239.567-010; 1991 WL 672232 (G.P.O.)

As the VE observed, driving is not required to perform office helper jobs ("<u>May</u> deliver items to other business establishments"). (Emphasis added.) Driving does not appear to be a consequential task of the office helper job. Most of the job's requirements do not involve driving and many delivery functions would occur within the same building, and involve no driving. The VE's testimony, then, is supported by the DICOT job description and is persuasive evidence that explains any deviation from or inconsistency with the DICOT office helper job description based on the "no driving" restriction.

Plaintiff also asserts that the office helper job may require use of an electric letter opener which would conflict with the motorized equipment/dangerous machinery limitation in Plaintiff's RFC. Again, however, the VE's job erosion percentage plainly encompasses the RFC's limitations to no motorized equipment or work around dangerous machinery. (AR 352.) The VE's opinion was reasonable and supported by the DICOT job description. The description does not even say whether the operation of the letter opener is by hand or machine. The task is not mandatory ("May use office equipment) and does not appear to be a significant aspect of the job. The VE's opinion for any variation from DICOT is persuasive evidence.

The VE's testimony constitutes substantial evidence in support of the ALJ's step five finding that Plaintiff can perform 40% of office helper jobs. <u>Moore</u>, 216 F.3d at 869-70. The ALJ was entitled to rely on it. <u>Bayliss</u>, 427 F.3d at 1217-18.

**C. The ALJ's Step Five Determination That Plaintiff Can Perform The Job Of Bench Assembler Is Not Supported By Substantial Evidence**

In the Prior Decision, remand also was ordered as to the bench assembler job. (AR 372.) The DICOT job description for the bench assembler occupation provides as follows:

> Assembles parts to form yard and garden care equipment components, such as reels, steering handles, and gear boxes, following specifications and using handtools and power tools: Fits parts of components together and fastens them with bolts and cotter pins, using handtools and pneumatic impact wrench. Seats inserts, such as bearings and grease

seals in hubs and sleeves, using power press. Rivets reel blades to hubs
on reel shaft, using pneumatic clinching gun, and sets rivets, using rivet
press [RIVETING-MACHINE OPERATOR (any industry) I]. May be
designated according to part assembled as Reel Fabricator (agric.
equip.).

DICOT 706.684-042; 1991 WL 679055 (G.P.O.). The bench assembler job can require use of power tools, a pneumatic impact wrench, a pneumatic clinching gun and a rivet press. Id. The use of motorized equipment appears central to the job. DICOT, however, indicates moving mechanical parts are not present. Id.

As determined in the Prior Decision, there appears to be an inconsistency between Plaintiff's RFC precluding operation of motorized equipment and the DICOT job requirements for the bench assembler position. (AR 372.) The ALJ's RFC had precluded Plaintiff from operating motorized equipment or working around dangerous moving machinery. (AR 12.) The bench assembler job plainly requires working with power tools. DICOT 706.684-042; 1991 WL 679055 (G.P.O.). The Prior Decision also was concerned that the power tools "may have potentially dangerous moving parts." (AR 372.) Nonetheless, the VE, eroding the job base by 75%, testified that Plaintiff could perform "some work as a bench assembler." (AR 50.) The VE said her testimony was consistent with DICOT (AR 51), but as the Prior Decision observed, the VE did not provide any further explanation or elaboration. (AR 372.) The Prior Decision then held that the DICOT job requirements for the bench assembler job appear to be inconsistent with Plaintiff's RFC and that the VE failed to provide any support or explanation for how Plaintiff could perform 25% of available bench assembler jobs. (AR 372.)

The Post-Remand Decision does not address or remedy the defect. On remand, the VE increased the erosion for the bench assembler job to 85% because of the addition of the low stress restriction. (AR 356.) The 85% erosion would leave 400 jobs regionally. The VE, however, once again offered no explanation for the inconsistency between her testimony and the DICOT job description for the bench assembler job. The ALJ did not inquire of the VE if

her testimony varied from DICOT or obtain an explanation for the variation. There was no specific discussion at the hearing of motorized equipment (other than driving), certainly nothing that would rise to the level of "persuasive evidence." The ALJ did not address the bench assembler issue in his Post-Remand Decision or even acknowledge it as a basis for remand. The ALJ, in short, repeated the same error.

The Commissioner does not address or even mention the Prior Decision remand on the bench assembler job. Instead, the Commissioner argues that the ALJ was entitled to rely on the VE testimony which eroded the job base for the operation of motorized equipment. This assertion conflicts with the Prior Decision and essentially is an implicit argument that the Prior Decision was wrong or should be disregarded or that the VE's testimony that Plaintiff can perform 15% of bench assembler jobs is sufficient without more.

The Prior Decision was correct. There was insufficient explanation for the variance between the VE testimony about the bench assembler job and the DICOT job requirements. Unlike the office helper jobs, which mostly do not involve driving, the DICOT job description makes clear that operating motorized equipment is central to the bench assembler job, enough so that the VE was required to offer more than a bare job erosion percentage. The VE's opinion was not a reasonable or sufficient explanation for the variation from DICOT nor constitutes persuasive evidence for it. The ALJ's step five determination on the bench assembler job is not supported by substantial evidence.

**D.    Disposition**

The Commissioner has had two opportunities to carry his step five burden to prove that Plaintiff can perform the bench assembler position. On remand, both the ALJ and VE failed to address the Post-Remand Decision on that occupation. Another remand on the issue is not warranted.

What remains is the office helper position, 60% eroded with 600 jobs regionally. The Court is concerned whether 600 jobs regionally is sufficient to conclude that Plaintiff is not disabled. Even adding the 400 bench assembler jobs, the Court would have the same concern. The ALJ decision does not address this issue and the parties do not address it in

their Joint Stipulation.  The Court therefore will remand the case solely on the sufficiency of 600 jobs regionally to establish non-disability.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and that this action be remanded for further proceedings in accordance with Memorandum Opinion and Order and with law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 22, 2011

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE